# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

AMERICAN CHEMISTRY COUNCIL, *et al.*,

    *Plaintiffs*,

    v.

JAMES C. KENNEY, *in his official capacity as Secretary of New Mexico Environment Department*; and RAÚL TORREZ, *in his official capacity as Attorney General of New Mexico*,

    *Defendants*.

Case No. 1:26-cv-02130-KRS-SCY

**[PROPOSED]**
**BRIEF OF THE CHAMBER OF COMMERCE OF THE UNITED STATES**
**OF AMERICA AS *AMICUS CURIAE* IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.........................................................................................................ii

INTRODUCTION AND INTEREST OF *AMICUS CURIAE* .......................................................... 1

ARGUMENT.................................................................................................................................... 2

      I.      New Mexico's Content- And Viewpoint-Based PFAS Disclosure Mandate Is
            Subject To Strict Scrutiny ....................................................................................... 2

      II.     The *Zauderer* Standard Does Not Apply To The PFAS Disclosure Mandate......... 5

      III.    The PFAS Disclosure Mandate Fails Any First Amendment Standard .................. 9

            A.     New Mexico Failed To Identify A Sufficient Government Interest............ 9

            B.     The PFAS Disclosure Mandate Is Unjustified And Unduly
                    Burdensome ................................................................................... 13

CONCLUSION............................................................................................................................... 16

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Beverage Ass'n v. City & Cnty. of San Francisco,*
916 F.3d 749 (9th Cir. 2019) ................................................................14–15

*Am. Meat Inst. v. USDA,*
760 F.3d 18 (D.C. Cir. 2014) ............................................................8, 11–12

*Animal Legal Def. Fund v. Kelly,*
9 F.4th 1219 (10th Cir. 2021) ........................................................................2

*Cal. Chamber of Com. v. Bonta,*
781 F. Supp. 3d 1071 (E.D. Cal. 2025)........................................................14

*Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics,*
29 F.4th 468 (9th Cir. 2022) ..........................................................................7

*Cerveny v. Aventis, Inc.,*
855 F.3d 1091 (10th Cir. 2017) ...................................................................14

*Chiles v. Salazar,*
146 S. Ct. 1010 (2026)........................................................................2–3, 5

*CTIA—The Wireless Association v. City of Berkeley,*
928 F.3d 832 (9th Cir. 2019) .......................................................................11

*Edenfield v. Fane,*
507 U.S. 761 (1993)..............................................................................9, 13

*FEC v. Cruz,*
596 U.S. 289 (2022)........................................................................................9

*Free Speech Coal., Inc. v. Paxton,*
606 U.S. 461 (2025)........................................................................................5

*Free Speech Coal., Inc. v. Paxton,*
95 F.4th 263 (5th Cir. 2024) ....................................................................6–7

*Iancu v. Brunetti,*
588 U.S. 388 (2019)........................................................................................4

*Int'l Dairy Foods Ass'n v. Amestoy*,
 92 F.3d 67 (2d Cir. 1996)......................................................................................11–12

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps.*,
 585 U.S. 878 (2018).....................................................................................................8

*Kennedy v. Bremerton Sch. Dist.*,
 597 U.S. 507 (2022)...................................................................................................10

*Matal v. Tam*,
 582 U.S. 218 (2017).....................................................................................................4

*Nat'l Ass'n of Mfrs. v. SEC*,
 800 F.3d 518 (D.C. Cir. 2015)....................................................................................5

*Nat'l Ass'n of Wheat Growers v. Bonta*,
 85 F.4th 1263 (9th Cir. 2023) .....................................................................................7

*Nat'l Inst. of Fam. & Life Advocs. (NIFLA) v. Becerra*,
 585 U.S. 755 (2018)......................................................................2, 5–6, 8–9, 13–16

*NRA v. Vullo*,
 602 U.S. 175 (2024).....................................................................................................3

*Reed v. Town of Gilbert*,
 576 U.S. 155 (2015).....................................................................................................3

*Retail Energy Advancement League v. Brown*,
 175 F.4th 551 (4th Cir. 2026) .......................................................................10, 13, 15

*Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*,
 487 U.S. 781 (1988).....................................................................................................3

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
 515 U.S. 819 (1995).....................................................................................................3

*Safelite Grp., Inc. v. Jepsen*,
 764 F.3d 258 (2d Cir. 2014)....................................................................................8, 10

*Sorrell v. IMS Health Inc.*,
 564 U.S. 552 (2011).....................................................................................................3

*Thompson v. W. States Med. Ctr.*,
 535 U.S. 357 (2002).....................................................................................................9

iii

*United States v. Alvarez*,
    567 U.S. 709 (2012)...............................................................................................8

*X Corp. v. Bonta*,
    116 F.4th 888 (9th Cir. 2024) ...........................................................................11

*Zauderer v. Off. of Disciplinary Counsel*,
    471 U.S. 626 (1985).......................................................................................5, 13

**Statutes**

N.M. Admin. Code § 20.13.2.13.....................................................................4, 6, 14–15

N.M. Stat. Ann. § 74-15-2 ........................................................................................7

N.M. Stat. Ann. § 74-15-3 ...................................................................................6, 12

**Other Authorities**

Boris Babic & Sara Gerke, *Notice and Explanation in Healthcare AI: Lessons
    from California's Proposition 65 Experience*, 25 Am. J. Bioethics 115 (2025)......................14

N.M. Env't Dep't, *PFAS in New Mexico* (last visited July 8, 2026) ............................................12

N.M. Env't Dep't, *PFAS in Products* (last visited July 8, 2026)........................................4, 11–12

U.S. Env't Prot. Agency, *Pesticides Containing a Single Fluorinated Carbon*
    (Nov. 26, 2025) ...............................................................................................7

U.S. Food & Drug Admin., *Authorized Uses of PFAS in Food Contact
    Applications* (Jan. 3, 2025) ................................................................................6

**INTRODUCTION AND INTEREST OF *AMICUS CURIAE***

The Chamber of Commerce of the United States of America is the world's largest business organization.  As the nation's leading advocate for business, the Chamber represents companies and professional organizations of every size, in every industry sector, and from every region of the country—including not only manufacturers of products containing PFAS, but also numerous businesses that use such products.  An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts.  To that end, the Chamber regularly files *amicus curiae* briefs in cases, like this one, that raise issues of concern to the nation's business community.

This case presents a straightforward but important First Amendment problem.  New Mexico's PFAS Disclosure Mandate requires businesses to affix to their products and related communications a pictograph of an Erlenmeyer flask labeled "PFAS."  "PFAS" refers to per- and poly-fluoroalkyl substances, a broad class of widely used substances.  Certain PFAS are used in many commonplace and critical products that Americans use every day, providing those products with stain-resistant, waterproof, and non-stick properties.  Although New Mexico acknowledges that PFAS vary widely in their properties and effects—and that many covered products comply with federal safety and regulatory standards—the Mandate treats them as a monolith, requiring a single, state-selected warning symbol regardless of product, use, or risk.  That symbol is not a neutral identifier.  By compelling businesses to display an Erlenmeyer flask, a widely recognized visual shorthand for synthetic chemicals and potential hazard, the State forces them to convey a loaded message designed to influence consumer perception.  This approach triggers serious First Amendment concerns.

1

The Supreme Court's precedents make clear how to analyze laws like this one. Content- and viewpoint-based regulations of speech are generally subject to strict scrutiny, *see, e.g.*, *Chiles v. Salazar*, 146 S. Ct. 1010, 1020 (2026), and the narrow exception for certain compelled disclosures recognized in *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985), applies only where the government requires the dissemination of purely factual, uncontroversial information tied to the terms of a commercial transaction. New Mexico's PFAS Disclosure Mandate satisfies neither standard. It compels a message chosen for its expressive impact, takes sides in an ongoing scientific and policy debate, and operates untethered to the kind of transaction-specific disclosures that *Zauderer* contemplates. New Mexico has identified no sufficient governmental interest for that Mandate. Instead, New Mexico has imposed an unjustified and unduly burdensome compelled-speech regime that threatens to drown out businesses' own messages and to impose on businesses substantial, nationwide compliance costs for no corresponding benefit. The Mandate cannot survive First Amendment scrutiny of any kind.

## ARGUMENT

### I.    New Mexico's Content- And Viewpoint-Based PFAS Disclosure Mandate Is Subject To Strict Scrutiny

The First Amendment, which applies to the States through the Fourteenth Amendment, prohibits laws "abridging the freedom of speech." "[T]he First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Animal Legal Def. Fund v. Kelly*, 9 F.4th 1219, 1227 (10th Cir. 2021) (quoting *United States v. Stevens*, 559 U.S. 460, 468 (2010)).

Laws that regulate speech must therefore meet a high standard. "As a general matter," "content-based regulations … are presumptively unconstitutional and may be justified only if the

2

government proves that they are narrowly tailored to serve compelling state interests." *Nat'l Inst. of Fam. & Life Advocs. (NIFLA) v. Becerra*, 585 U.S. 755, 766 (2018) (capitalization altered); *see Chiles*, 146 S. Ct. at 1021. Laws that "discriminat[e] among viewpoints"—the most "blatant and egregious form of content discrimination"—must likewise satisfy "strict scrutiny." *Reed v. Town of Gilbert*, 576 U.S. 155, 164, 168 (2015) (cleaned up).

New Mexico's PFAS Disclosure Mandate is content- and viewpoint-based. *First*, a law "is content based if [it] applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 576 U.S. at 163. That describes the PFAS Disclosure Mandate because it "compel[s] individuals to speak a particular message," *NIFLA*, 585 U.S. at 766 (cleaned up); *see also Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 795 (1988) ("Mandating speech that a speaker would not otherwise make necessarily alters the content of the speech.")—a pictograph of an Erlenmeyer flask labeled "PFAS."

*Second*, the PFAS Disclosure Mandate regulates based on viewpoint. "[V]iewpoint discrimination is uniquely harmful to a free and democratic society." *NRA v. Vullo*, 602 U.S. 175, 187 (2024); *see also Chiles*, 146 S. Ct. at 1021 ("governments in this country must nearly always abstain from" "viewpoint discrimination" (cleaned up)). Viewpoint-based laws regulate not just a subject, but the perspective from which that subject is presented. *See Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). To assess whether a law is viewpoint discriminatory, courts consider both its "practical operation" and its "purpose." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565 (2011).

By design and in operation, the Mandate forces businesses to adopt New Mexico's negative framing of PFAS. It requires them to "print[ ], mount[ ], mold[ ], engrave[ ], emboss[ ], or

3

otherwise affix[ ]" to their products "an outline of an Erlenmeyer flask with the word 'PFAS' inside the flask." N.M. Admin. Code § 20.13.2.13(C)(1), (2). New Mexico chose that symbol for its communicative content, not its chemistry. In its own words, the State hopes the "pictograph" will "encourag[e]" consumers to avoid certain products to "slow New Mexicans' exposure to these chemicals." N.M. Env't Dep't, *PFAS in Products* (last visited July 8, 2026), https://tinyurl.com/25sujvc5.

That choice matters. The Erlenmeyer flask is not a neutral identifier; it is an iconic visual cue for laboratory chemicals and hazard. In common usage and in popular culture, it operates as a shorthand for unnatural or potentially dangerous substances. Requiring that symbol forces speakers to communicate the State's preferred message: that certain products should be viewed with suspicion and avoided. That is viewpoint discrimination. *See infra* Section II.

Because the PFAS Disclosure Mandate regulates based on viewpoint, it is subject to strict scrutiny regardless of whether it is "commercial speech." *See Matal v. Tam*, 582 U.S. 218, 251 (2017) (Kennedy, J., joined by Ginsburg, Sotomayor, and Kagan, JJ., concurring in part and concurring in the judgment) ("commercial speech … does not serve as a blanket exemption from the First Amendment's requirement of viewpoint neutrality"); *id.* at 254 (Thomas, J., concurring in part and concurring in the judgment) ("strict scrutiny is appropriate, whether or not the speech in question may be characterized as 'commercial'").[1] Viewpoint discriminatory laws "are not

---

[1] In *Matal*, "all the Justices agreed" that if speech regulation "is viewpoint-based, it is unconstitutional." *Iancu v. Brunetti*, 588 U.S. 388, 392–93 (2019). Although the five concurring Justices would have applied strict scrutiny, Justice Alito's plurality opinion said it "need not resolve" "the appropriate test" because viewpoint discrimination is not permitted under any First Amendment standard. *Matal*, 582 U.S. at 245 & n.17 (Alito, J.); *see id.* at 244 ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the

subject to mere rational-basis review or intermediate scrutiny." *Chiles*, 146 S. Ct. at 1024. Strict scrutiny requires speech regulation to be the least restrictive means of achieving a compelling governmental interest. *NIFLA*, 585 U.S. at 766. It "is the most demanding test known to constitutional law." *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 484 (2025) (citation omitted).

## II.    The *Zauderer* Standard Does Not Apply To The PFAS Disclosure Mandate

New Mexico's PFAS Disclosure Mandate is not in the narrow category of speech assessed under the special, more deferential test announced in *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985), governing corrective disclosures of affirmative solicitations for professional engagements. As the Supreme Court explained in *NIFLA*, "*Zauderer* has no application" unless a disclosure is "limited to [1] purely factual and [2] uncontroversial information [3] about the terms under which services will be available." 585 U.S. at 768–69 (cleaned up); *see also id.* at 769 ("*Zauderer* does not apply outside of these circumstances").

*First*, the pictograph does not convey "purely factual" information. As plaintiffs rightly point out, ECF No. 3 at 8, commercial-scale factories do not use Erlenmeyer flasks; the symbol thus is literally inaccurate. The State selected that non-neutral symbol as a vehicle to force manufacturers to convey a non-neutral message: as explained, the Erlenmeyer flask is an iconic visual cue for laboratory chemicals and hazard that in common usage operates as a shorthand for unnatural or potentially dangerous substances. The point is not to convey factually accurate information but to force companies to disparage their own products as somehow "tainted." *Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 530 (D.C. Cir. 2015); *see ibid.* ("requiring a company to

_____

expression of an idea simply because society finds the idea itself offensive or disagreeable"); *id.* at 243, 247 ("the commercial label" does not permit "viewpoint discrimination").

publicly condemn itself is undoubtedly a more 'effective' way for the government to stigmatize and shape behavior than for the government to have to convey its views itself, but that makes the requirement more constitutionally offensive, not less so").

*Second*, the pictograph does not convey "uncontroversial information." *NIFLA*, 585 U.S. at 768. "[A] compelled statement is 'uncontroversial' for purposes of *Zauderer* where the truth of the statement is not subject to good-faith scientific or evidentiary dispute and where the statement is not an integral part of a live, contentious political or moral debate." *Free Speech Coal., Inc. v. Paxton*, 95 F.4th 263, 281–82 (5th Cir.), *aff'd*, 606 U.S. 461 (2025).

The record shows substantial scientific and evidentiary uncertainty with respect to products that the PFAS Disclosure Mandate requires to bear the pictograph. As plaintiffs explain, ECF No. 3 at 14–15, there is no uniform scientific consensus regarding the risks posed by the very large set of substances encompassed within the PFAS class. Experts—including international bodies and federal regulators—have cautioned against treating all PFAS as a monolith for purposes of risk assessment, recognizing substantial variation in their chemical properties and effects.

But that is exactly what the PFAS Disclosure Mandate does. It applies its pictograph warning to all PFAS indiscriminately, including those contained in products that the New Mexico legislature exempted from the statute's reach. *Compare* N.M. Stat. Ann. § 74-15-3(A) (exempting sixteen product categories from PFAS restriction and reporting requirements), *with* N.M. Admin. Code § 20.13.2.13(B) (fewer exemptions). The mandated warning applies to products that federal regulators have specifically determined are safe. *See, e.g.*, U.S. Food & Drug Admin., *Authorized Uses of PFAS in Food Contact Applications* (Jan. 3, 2025), https://tinyurl.com/264dfd7j ("Since the 1960s, the FDA has authorized specific types of substances that contain PFAS for use in food

6

contact applications" based on "information … demonstrating that there is a reasonable certainty of no harm from the intended use"). It even applies to substances that are not PFAS or whose status as PFAS is actively debated. *See* Am. Coatings Ass'n Comment at 5–7, *In re Proposed Adoption of 20.13.2 NMAC*, No. EIB 25-61(R) (filed Mar. 3, 2026), https://tinyurl.com/ukuwjya5 (collecting scientific sources); *compare* N.M. Stat. Ann. § 74-15-2(S) (defining PFAS as "fluorinated organic chemicals containing at least one fully fluorinated carbon atom"), *with* U.S. Env't Prot. Agency, *Pesticides Containing a Single Fluorinated Carbon* (Nov. 26, 2025), https://tinyurl.com/3zbs5e5u (explaining "EPA-approved single fluorinated compounds are not forever chemicals, they are not PFAS, and do not pose any risks of concern when used as labeled").

The Ninth Circuit's decision in *National Association of Wheat Growers v. Bonta*, 85 F.4th 1263 (9th Cir. 2023), confirms that conclusion. There, the court enjoined California's Proposition 65 warning for glyphosate, emphasizing that the compelled warning was not "uncontroversial" in light of "robust disagreement" within the scientific community about whether glyphosate is carcinogenic. *Id.* at 1277–78. That reasoning applies *a fortiori* here. Just like the glyphosate warning, New Mexico's Mandate compels a categorical message about a broad class of substances despite their heterogeneity and substantial disagreement over their risks. And just as in *Wheat Growers*, the Mandate "improperly 'elevates one side of a legitimately unresolved scientific debate.'" *Id.* at 1279. That makes it ineligible for the less stringent First Amendment scrutiny afforded by *Zauderer*. *Ibid.*; *see also Free Speech Coal.*, 95 F.4th at 282 ("the health impacts … are currently too contentious and controversial to receive *Zauderer* scrutiny"); *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 478 (9th Cir. 2022) ("the safe harbor warning is controversial because of the scientific debate over whether acrylamide in food causes

7

cancer in humans"); *cf. United States v. Alvarez*, 567 U.S. 709, 749–52 (2012) (Alito, J., dissenting) (recognizing that the government may not engage in viewpoint discrimination as to matters of "scientific debate"); *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps.*, 585 U.S. 878, 913–14 (2018) (speech on "controversial subjects such as climate change … [and] evolution," which "are undoubtedly matters of profound value and concern to the public," "occupies the highest rung of the hierarchy of First Amendment values and merits special protection" (cleaned up)).

*Third*, the pictograph is not a disclosure "about the terms under which services will be available." *NIFLA*, 585 U.S. at 768; *see Am. Meat Inst. v. USDA*, 760 F.3d 18, 26 (D.C. Cir. 2014) (en banc) (explaining that compelled disclosures "must relate to the good or service offered"); *id.* at 33 n.1 (Kavanaugh, J., concurring in the judgment) (same). In the administrative proceedings that culminated in the PFAS Disclosure Mandate, some agency officials testified that fluoropolymers and PFAS pose environmental risks during manufacturing and disposal. *See, e.g.*, Hrg. Tr. at 113, *In re Proposed Adoption of 20.13.2 NMAC*, No. EIB 25-61(R) (Feb. 23, 2026) (Testimony of Dr. Eric John Chapman, N.M. Env't Dep't) ("the full environmental impact … must consider PFAS emissions from production, use, and disposal"), *excerpted at* ECF No. 3-1 at 40. Even taking those asserted risks at face value, they arise upstream in product manufacturing or at end-of-life disposal—not in the consumer transaction and with no connection to the consumers who will encounter the warning. The PFAS Mandate thus compels speech about matters beyond the product or services offered, so the "*Zauderer* standard does not apply." *NIFLA*, 585 U.S. at 768; *see also Safelite Grp., Inc. v. Jepsen*, 764 F.3d 258, 263–64 (2d Cir. 2014) (declining to apply *Zauderer* where the compelled disclosure extended beyond the product).

### III.    The PFAS Disclosure Mandate Fails Any First Amendment Standard

Even if *Zauderer* supplied the governing standard (it does not), the PFAS Disclosure Mandate would still fail that review.  The State was required—"[e]ven under *Zauderer*"—to identify a "potentially real, not purely hypothetical" interest supporting compelled speech and to craft a disclosure that is neither "unjustified [n]or unduly burdensome."  *NIFLA*, 585 U.S. at 776.  The agency did neither.

### A.    New Mexico Failed To Identify A Sufficient Government Interest

"If the First Amendment means anything, it means that regulating speech must be a last—not first—resort."  *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 373 (2002).  The government "must do more than simply posit the existence of the disease sought to be cured."  *FEC v. Cruz*, 596 U.S. 289, 307 (2022) (cleaned up).  "It must instead point to record evidence or legislative findings demonstrating the need to address a special problem."  *Ibid.* (cleaned up); *see also Edenfield v. Fane*, 507 U.S. 761, 770–71 (1993) ("a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real" (citing *Zauderer*, 471 U.S. at 648–49)).

New Mexico stumbles at the threshold because the agency's directive never identifies *any* asserted interest justifying compelled speech, let alone attempts to establish it with evidence.  Instead, the agency order imposing the PFAS Disclosure Mandate recites generalized findings that the rules that the agency issued are "justified given the character and degree of injury to or interference with health, welfare, animal and plant life, property, and the environment," are "in the public interest," and are "technically practicable and economically reasonable."  Final Order and Statement of Reasons at 31–32, *In re Proposed Adoption of 20.13.2 NMAC*, No. EIB 25-61(R)

9

(Apr. 17, 2026), https://tinyurl.com/y62ksh68.  Those generic findings refer to the entirety of the rules that the agency promulgated and contain no specific discussion of the compelled labeling requirement.  That absence is dispositive because "justifications for interfering with First Amendment rights" must be "contemporaneous," not "invented *post hoc* in response to litigation." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 543 n.8 (2022) (cleaned up); *see Retail Energy Advancement League v. Brown*, 175 F.4th 551, 561 (4th Cir. 2026) (refusing to "consider a 'backup' interest" that "the governmental body 'never raised'" before litigation); *Safelite Grp.*, 764 F.3d at 265 ("we are skeptical that the government's asserted consumer protection interests are genuine and not merely post-hoc rationalizations").  Having failed to articulate any cognizable interest justifying the Mandate at the time when the Mandate was adopted, the State cannot cure that defect by offering *post hoc* rationalizations in litigation.

Nor would the interests suggested contemporaneously by agency officials suffice even if the order had actually adopted them.  In the agency proceedings, the New Mexico Environment Department's witnesses did not offer a consistent account of the label's purpose.  In their written testimony, multiple government witnesses described the label in terms of communicating hazard and risk from PFAS.  At the hearing, however, that rationale narrowed.  Faced with evidence that PFAS are not uniform and do not present uniform risks, Environment Department witnesses— including its designated labeling expert—recast the label's purpose as simply providing information to consumers.  *See, e.g.*, Hrg. Tr. at 618, *In re Proposed Adoption of 20.13.2 NMAC*, No. EIB 25-61(R) (Feb. 24, 2026) (Testimony of Dr. Deborah E. Dickerson) (testifying that the label "is not designed to communicate about hazards, it's just designed to communicate about the[ ] presence [of PFAS] in … products"), *excerpted at* ECF No. 3-1 at 91; Complex Prod. Mfrs. Ass'n

10

& All. for Auto. Innovation Proposed Order and Statement of Reasons at 15–18, *In re Proposed Adoption of 20.13.2 NMAC*, No. EIB 25-61(R) (filed Mar. 5, 2026), https://tinyurl.com/3cnhevbb (summarizing testimony by multiple officials). Consistent with that position, the Environment Department now describes the PFAS Disclosure Mandate as a measure that "improves transparency" and "empower[s] purchasers to select available PFAS-free alternatives." N.M. Env't Dep't, *PFAS in Products* (last visited July 8, 2026), https://tinyurl.com/25sujvc5. But even crediting that informational rationale as the government's best account of the rule, it falls short because a bare interest in providing information to consumers is not enough.

It is well established that "consumer curiosity alone is" not "enough" to sustain a compelled disclosure requirement, in the commercial speech context or any other. *Int'l Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 74 (2d Cir. 1996) (collecting authorities); *see also CTIA—The Wireless Association v. City of Berkeley*, 928 F.3d 832, 844 (9th Cir. 2019) ("the interest at stake must be more than the satisfaction of mere 'consumer curiosity'"); *Am. Meat Inst.*, 760 F.3d at 32 (Kavanaugh, J., concurring in the judgment) ("consumer curiosity alone is not a strong enough state interest to sustain a compelled commercial disclosure" (cleaned up)). And framing that rejected interest as "transparency" does not rescue it. Simply calling a law "a transparency measure," as the State's experts did here, raises a question: "*transparency into what?*" *X Corp. v. Bonta*, 116 F.4th 888, 902 (9th Cir. 2024) (emphasis altered) (invalidating compelled reporting requirement). After all, if merely "providing consumers with information" were a sufficient state interest, a government could compel disclosures about anything it chooses. That a speech compulsion provides consumers with some information about something is "true of any and all

disclosure requirements." *Am. Meat Inst.*, 760 F.3d at 31 (Kavanaugh, J., concurring in the judgment).

That is precisely the problem here. New Mexico has acknowledged that not all PFAS are the same nor present the same risks. The Legislature itself recognized important distinctions within the broad category of PFAS, exempting fluoropolymers from the PFAS Act's statutory ban. *See* N.M. Stat. Ann. § 74-15-3(A)(16). And Environment Department witnesses "repeatedly conceded before the [agency] that fluoropolymers, and PFAS to which consumers are not exposed, do not pose a direct risk to consumers." ECF No. 3 at 33; *id.* at 8–9; *see also* N.M. Env't Dep't, *PFAS in New Mexico* (last visited July 8, 2026), https://tinyurl.com/37zpmj46 (acknowledging that only "[s]ome PFAS are associated with health effects" (emphasis added)). In fact, the record confirmed that many substances commonly classified as PFAS have not been shown to have any risks. *See, e.g.*, ECF No. 3 at 11–12, 14, 23 (citing record authorities). Once New Mexico made that acknowledgment, "transparency" for its own sake indisputably became both the beginning and the end of the supposed state interest.

To accept New Mexico's disclosure mandate would invite "no end to the information that states could require." *Amestoy*, 92 F.3d at 74. States, in the name of "empowering purchasers," *see* N.M. Env't Dep't, *PFAS in Products* (last visited July 8, 2026), https://tinyurl.com/25sujvc5, could require disclosures about all sorts of contentious topics—such as "whether their U.S.-made product was made by U.S. citizens and not by illegal immigrants" or "the political affiliation of a business's owners," *Am. Meat Inst.*, 760 F.3d at 32 (Kavanaugh, J., concurring in the judgment). "These are not far-fetched hypotheticals, particularly at the state or local level." *Ibid.* The First Amendment does not permit that result.

12

**B.    The PFAS Disclosure Mandate Is Unjustified And Unduly Burdensome**

Plaintiffs' Motion should also be granted because the PFAS Disclosure Mandate is "unjustified" and "unduly burdensome." *Zauderer*, 471 U.S. at 651; *see also NIFLA*, 585 U.S. at 776 ("Importantly, [the State] has the burden to prove that the [disclosure requirement] is neither unjustified nor unduly burdensome."); *Retail Energy*, 175 F.4th at 562 ("the burden [is] on the State"). The Mandate sweeps far more "broad[ly] than reasonably necessary." *NIFLA*, 585 U.S. at 776 (applying *Zauderer*).

*First*, the PFAS Disclosure Mandate is not "justified." To satisfy *Zauderer*, the State must show that its compelled disclosure "will in fact alleviate" its asserted harm "to a material degree." *Edenfield*, 507 U.S. at 770–71 (citing *Zauderer*, 471 U.S. at 648–49); *see NIFLA*, 585 U.S. at 776. As explained above, the Environment Department appears to have relied upon a generalized desire to provide consumers with information about PFAS. Even assuming that this interest could suffice to justify the Mandate (and it does not, as explained above), the Mandate does not materially advance any such interest. The pictogram does not convey product-specific information, distinguish among different PFAS, or provide context about exposure or use. At most, it signals the mere presence of a broad class of substances—leaving consumers no closer to understanding whether a particular product presents any meaningful risk to consumers or the environment. That kind of undifferentiated disclosure cannot "alleviate" any asserted informational harm in a meaningful way.

Not only that, the PFAS Disclosure Mandate is also unjustified because it is self-defeating. The proliferation of this kind of undifferentiated disclosure triggers so-called "alert fatigue," whereby the ubiquity of product disclosures leads consumers to "start to take them less seriously

13

or … ignore them altogether."  Boris Babic & Sara Gerke, *Notice and Explanation in Healthcare AI: Lessons from California's Proposition 65 Experience*, 25 Am. J. Bioethics 115, 115 (2025), *available at* https://tinyurl.com/jnv23ync.   Indeed, alert fatigue under similar mandates "has reached such extreme levels" that the required disclosures are "simply not taken seriously."  *Id.* (discussing California's Proposition 65); *accord Cal. Chamber of Com. v. Bonta*, 781 F. Supp. 3d 1071, 1077 (E.D. Cal. 2025) (noting that the state agency acknowledged the risk of "warning fatigue" from the proposed Proposition 65 disclosure requirement at issue in that case (cleaned up)); *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1102 (10th Cir. 2017) ("overwarnings … can render the warnings useless").  Here too, the "over-labeling" required by the Mandate will "lead[ ] to consumer fatigue for the label itself," defeating any justification for it.  *See* Hrg. Tr. at 1310, *In re Proposed Adoption of 20.13.2 NMAC*, No. EIB 25-61(R) (Feb. 23, 2026) (Testimony of Lindsey Hueer), *excerpted at* ECF No. 3-2 at 67 (cleaned up).

     *Second*, the PFAS Disclosure Mandate is independently unlawful because it is unduly burdensome.  Even under *Zauderer*, a compelled disclosure fails if it imposes an undue burden. *See NIFLA*, 585 U.S. at 776; *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 757 (9th Cir. 2019) ("a government-compelled disclosure that imposes an undue burden fails for that reason alone").  Here, the Mandate requires manufacturers to affix the pictogram directly to products (and often to packaging and websites), in a specified, conspicuous size and format, across a wide range of consumer goods.  *See* N.M. Admin. Code § 20.13.2.13(A), (C).  For companies operating national and global supply chains, that requirement cannot realistically be confined to New Mexico: to avoid liability, manufacturers must redesign products, packaging, and labeling

14

processes for all markets.  That structural feature alone imposes substantial compliance burdens far removed from the kind of modest disclosures that *Zauderer* contemplates.

The Mandate also threatens to "drown out" manufacturers' own speech.  *NIFLA* makes clear that compelled disclosures are impermissible where they risk "drown[ing] out" a speaker's own message.  585 U.S. at 778.  That risk is present here.  New Mexico requires the pictogram to be affixed to the product itself, to consumer packaging, and to all pre-sale communications— including online and catalog listings—and to be displayed with conspicuousness and prominence comparable to other consumer information.  *See* N.M. Admin. Code § 20.13.2.13(A), (C).  Those requirements ensure that the State's message will accompany—and compete with—businesses' own speech at every point of contact with consumers.  Courts have recognized that even relatively concise or small disclosures can be problematic when they must appear on all marketing materials and risk overwhelming the speaker's message.  *See Retail Energy*, 175 F.4th at 568; *Am. Beverage Ass'n*, 916 F.3d at 757.  By mandating an omnipresent, prominent label untethered to product-specific risk, New Mexico has required speech that threatens to "drown out" protected expression and is therefore unduly burdensome, especially given that the Mandate applies across products, packaging, and all pre-sale communications.

The burden is compounded by the nature of the compelled message itself.  As explained, the pictogram is not a neutral, context-specific disclosure; it is a visual cue intended to associate products with unfamiliar or potentially harmful substances.  By requiring businesses to affix that message to their own products wherever they are sold or displayed, New Mexico effectively conscripts private speakers to deliver a warning that may mislead or alarm consumers about safe and lawful products.  And because the PFAS Disclosure Mandate applies regardless of product

15

type, PFAS use, or actual risk, it sweeps far more broadly than any asserted interest could justify. A disclosure regime that imposes substantial, nationwide compliance costs for no corresponding benefit, while compelling speech that distorts rather than informs, is unduly burdensome under *Zauderer* and *NIFLA*.  Because the Mandate cannot satisfy even *Zauderer*'s "unjustified" and "unduly burdensome" requirements, it necessarily fails the more demanding scrutiny that applies outside that narrow exception.

### CONCLUSION

The Court should grant plaintiffs' motion for a preliminary injunction.

Respectfully submitted,

PROPOSED FILING
Jeremy J. Broggi (*pro hac vice* pending)
Joel S. Nolette (*pro hac vice* pending)
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
T: (202) 719-7000
F: (202) 719-7049
jbroggi@wiley.law
jnolette@wiley.law

PROPOSED FILING
Todd E. Rinner
SNELL & WILMER LLP
201 Third St. NW #1950
Albuquerque, NM 87102
T: (520) 882-1200
trinner@swlaw.com

*Counsel for Proposed* Amicus Curiae
*Chamber of Commerce of the United States*
*of America*

16