**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

AMERICAN CHEMISTRY COUNCIL, ALLIANCE FOR AUTOMOTIVE INNOVATION, AMERICAN COATINGS ASSOCIATION, ASSOCIATION OF HOME APPLIANCE MANUFACTURERS, NATIONAL ASSOCIATION OF MANUFACTURERS, NATIONAL ELECTRICAL MANUFACTURERS ASSOCIATION, NATIONAL FEDERATION OF INDEPENDENT BUSINESS, INC., NEW MEXICO RETAIL ASSOCIATION, and POWER TOOL INSTITUTE,

*Plaintiffs*,

v.

JAMES C. KENNEY, *in his official capacity as Secretary of New Mexico Environment Department*; and RAÚL TORREZ, *in his official capacity as Attorney General of New Mexico*,

*Defendants*.

Case No. 1:26-cv-02130-MIS-SCY

**PLAINTIFFS' REPLY IN SUPPORT OF**
**MOTION FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

INTRODUCTION .......... 1

I. Defendants Misdescribe The Applicable First Amendment Law .......... 2

II. The Mandated Label Constitutes A Warning About All PFAS. .......... 4

III. There Is No "Consensus" All PFAS Should Be Regulated And Labeled As A Class. .......... 8

IV. Defendants Underplay The Burdens The Regulation Imposes On Regulated Entities. .......... 10

V. At A Minimum, The Court Should Enjoin The Regulation As Applied To Fluoropolymers Like PTFE And No-Consumer-Contact PFAS. .......... 11

VI. Defendants Present No Real Argument Against Maintaining The Status Quo .......... 12

CONCLUSION .......... 12

**TABLE OF AUTHORITIES**

**Cases**

*Am. Beverage Ass'n v. City & Cnty. of S.F.*,
916 F.3d 749 (9th Cir. 2019) ........ 3

*Am. Meat Inst. v. U.S. Dep't of Agric.*,
760 F.3d 18 (D.C. Cir. 2014) ........ 6, 7

*Ass'n of Home Appliance Mfrs. v. Weiser*,
826 F. Supp. 3d 1302 (D. Colo. 2025) ........ 3

*Cal. Chamber of Com. v. Bonta*,
781 F. Supp. 3d 1071 (E.D. Cal. 2025) ........ 3

*Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*,
29 F.4th 468 (9th Cir. 2022) ........ 3, 10

*CTIA v. City of Berkeley, Cal.*,
928 F.3d 832 (9th Cir. 2019) ........ 11

*Grocery Mfrs. Ass'n v. Sorrell*,
102 F. Supp. 3d 583 (D. Vt. 2015) ........ 4

*Kimberly-Clark Corp. v. Dist. of Columbia*,
286 F. Supp. 3d 128 (D.D.C. 2017) ........ 3

*McCullen v. Coakley*,
573 U.S. 464 (2014) ........ 3

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) ........ 4

*N.Y. State Rest. Ass'n v. N.Y.C. Bd. of Health*,
556 F.3d 114 (2d Cir. 2009) ........ 7

*Nat'l Ass'n of Mfrs. v. SEC*,
800 F.3d 518 (D.C. Cir. 2015) ........ 3

*Nat'l Ass'n of Wheat Growers v. Bonta*,
85 F.4th 1263 (9th Cir. 2023) ........ 3, 5, 6

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
585 U.S. 755 (2018) ........ 3, 7

*Pers. Care Prods. Council v. Bonta*,
799 F. Supp. 3d 1075 (E.D. Cal. 2025) ........ 3

*R.J. Reynolds Tobacco Co. v. FDA*,
696 F.3d 1205 (D.C. Cir. 2012) ..... 3

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011) ..... 3

*United States v. Stevens*,
559 U.S. 460 (2010) ..... 10

*X Corp. v. Bonta*,
116 F.4th 888 (9th Cir. 2024) ..... 4

*Zauderer v. Off. of Disciplinary Couns.*,
471 U.S. 626 (1985) ..... 11

**Statutes**

NMSA 1978 § 74-15-3(A)(16) ..... 9

NMSA 1978 § 74-15-4(B) ..... 10

**Regulations**

NMAC § 20.13.2.13(E) ..... 10, 11

NMAC § 20.13.2.13(F) ..... 11

NMAC § 20.13.2.13(F)(3) ..... 11

## INTRODUCTION

Defendants have a problem. They know their mandated label cannot survive constitutional review if it conveys a warning about PFAS, because such a warning would not be "purely factual and uncontroversial" under *Zauderer*. Their own expert declarations in this litigation confirm as much, as they are replete with hedging, especially with respect to fluoropolymers—appeals to "emerging data," "emerging evidence," "emerging research"; admissions that, when it comes to many categories of PFAS, "the pathological and physiological effects of PFAS on humans and other living organisms is still an area of active research"; and speculation about what "less well studied PFAS" and fluoropolymers "*may*" do. *See infra*, pp. 8, 11-12 (collecting statements). Under *Zauderer*, that is not good enough for Defendants to force third parties to deliver a compelled warning. Courts routinely strike down state-mandated warnings, for example under California's Prop 65, when settled science does not support them.

So Defendants want the Court to find that the mandated label is not a warning at all—just a neutral "consumer awareness label" akin to the nutritional information listed on a milk carton. They insist (at 14) "[t]he Erlenmeyer flask conveys the message that PFAS is a chemical: no more, no less," that "[a]n Erlenmeyer flask does not inherently convey danger or warning," and that "chemicals are part of everyday modern life," highlighting "water" as an example.

This argument is too clever by half and plainly wrong. Plaintiffs agree "chemicals are part of everyday modern life." But Defendants *nowhere* grapple with the fact that, *alone* among all chemicals, they are requiring *only PFAS*-containing products to bear the flask label. Indeed, *no* government requires a flask label for any other chemical. As Plaintiffs' expert Dr. Wilcox explains, consumers will draw the obvious inference: PFAS must be uniquely dangerous, which is why they are being singled out by the labeling mandate. In fact, while Defendants tell this Court the label

is not a warning, *NMED's own website* tells the public the obvious truth that it is:




*See* Suppl. Snyder Decl., Ex. 15; *see also id.* ("products must carry a warning if they are made with PFAS"). NMED's website further confirms the label is meant as a health warning, telling the public it can "*reduce health risks by looking for the PFAS symbol* and selecting products made without forever chemicals." *Id.*, Ex. 16 (emphasis added). The health warning embodied in the label is not "purely factual and uncontroversial" and so is unconstitutional.

The Court should maintain the status quo by quickly pausing the labeling mandate's January 1, 2027 effective date, for which regulated entities need months to prepare. Plaintiffs have a likelihood of success on the merits. The loss of First Amendment freedoms, even temporarily, is irreparable harm, and Defendants do not dispute that compliance with the labeling mandate will impose hundreds of millions of dollars in unrecoverable costs on Plaintiffs' members. No other state has imposed such an onerous PFAS labeling mandate across such broad swaths of industry, and Defendants never explain why their mandate must take effect while this litigation plays out.

## ARGUMENT

### I. Defendants Misdescribe The Applicable First Amendment Law.

At the outset, Defendants misdescribe and wrongly belittle the First Amendment interests at stake here. They (at 9) denigrate Plaintiffs' claims as concerning "the thinnest of First Amendment interests." But forcing someone to deliver a message with which they fundamentally disagree is anathema to the central purpose of the First Amendment, which is "to preserve an uninhibited marketplace of ideas in which truth will ultimately prevail." *McCullen v. Coakley*, 573

U.S. 464, 476 (2014). This principle applies as well to commercial speech: "The commercial marketplace, like other spheres of our social and cultural life, provides a forum where ideas and information flourish." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 578-79 (2011).

Under *Zauderer*, the state can compel speech only under very narrow circumstances: if the message is purely factual, uncontroversial, tied to the consumer transaction at hand, and not unduly burdensome. *See* Pls.' Mot. for a Prelim. Inj., Dkt. No. 3 at 11 ("Mot."). And importantly, it is the *government* that bears the burden of showing that its law qualifies for treatment under *Zauderer*, not a plaintiff's burden to show that it does not. *Cal. Chamber of Com. v. Bonta*, 781 F. Supp. 3d 1071, 1085 (E.D. Cal. 2025) ("The State has the burden of demonstrating that the applicable Prop 65 safe harbor warnings for acrylamide in food meet [the *Zauderer*] standard.").

Defendants' discussion of the governing law (at 7-10) suggests that pre-enforcement facial challenges under *Zauderer* are destined to fail. But such challenges are the norm in this context and commonly prevail. There are many examples of courts striking down speech mandates—for example, mandated warnings under California's Prop 65—on a facial, pre-enforcement basis.[1] Defendants' assertion (at 7) that Plaintiffs seek "an extraordinary injunction against an ordinary label" fails to grapple with that precedent. There is nothing "extraordinary" about courts striking down laws that fail the *Zauderer* test. And the mandated label is anything but "ordinary"—it is an extreme outlier. No other government requires a label like this one. *See* Mot. 25.

[1] *Ass'n of Home Appliance Mfrs. v. Weiser*, 826 F. Supp. 3d 1302, 1321 (D. Colo. 2025) (pre-enforcement facial challenge); *Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 530 (D.C. Cir. 2015) (same); *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 765 (2018) (same); *Am. Beverage Ass'n v. City & Cnty. of S.F.*, 916 F.3d 749, 757-58 (9th Cir. 2019) (same); *R.J. Reynolds Tobacco Co. v. FDA*, 696 F.3d 1205, 1208 (D.C. Cir. 2012) (same); *Pers. Care Prods. Council v. Bonta*, 799 F. Supp. 3d 1075, 1085-86 (E.D. Cal. 2025) (pre-enforcement as-applied challenge); *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 472-73, 479 (9th Cir. 2022) (same); *Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263 (9th Cir. 2023) (same); *Kimberly-Clark Corp. v. Dist. of Columbia*, 286 F. Supp. 3d 128, 148 (D.D.C. 2017) (same).

Defendants' reliance (at 8-9) on *Moody v. NetChoice, LLC*, 603 U.S. 707, 724 (2024), to attack the propriety of Plaintiffs' facial challenge is wholly misguided. Under *Zauderer*, the state cannot compel *anyone* to make a statement that is not "purely factual and uncontroversial." Mot. 11-12 (discussing precedent). If the challenged labeling mandate fails to meet that standard then it will be unconstitutional as applied to *everyone*. *See X Corp. v. Bonta*, 116 F.4th 888, 899 (9th Cir. 2024) (in post-*Moody* compelled speech case, explaining "the Content Category Report provisions raise the same First Amendment issues for every covered social media company," and so "we conclude that a facial challenge is permissible here"). Defendants do not cite a single case rejecting a challenge to a compelled warning under *Zauderer* because it was filed on a facial basis.

Contrary to Defendants' suggestion (at 16) that Plaintiffs' members can "correct" the unconstitutional label "by providing additional context on the packaging," none of the many cases cited in Plaintiffs' motion suggest a *Zauderer* violation can be cured by the company adding its own, contrary messaging. Even the single case Defendants cite, *Grocery Mfrs. Ass'n v. Sorrell*, 102 F. Supp. 3d 583, 630 (D. Vt. 2015), involved a disclosure that passed the *Zauderer* standard because it was purely factual and uncontroversial—a threshold showing the label here fails.

## II. The Mandated Label Constitutes A Warning About All PFAS.

The heart of Defendants' case is their argument (at 14) that the mandated label is merely a "consumer awareness label" and not a warning—that "[t]he Erlenmeyer flask conveys the message that PFAS is a chemical: no more, no less." That asks the Court to put on blinders to reality. In the public mind certain health and environmental risks are associated with chemical substances. Wilcox Decl. ¶¶ 28-29, 31-33. A consumer seeing a flask symbol labeled PFAS will assume that PFAS presents one or more of those risks—otherwise, why bother including the chemical symbol?

Defendants admit that chemicals in products are common, yet neither New Mexico nor any other state requires that any other chemical be called to consumers' attention with this type of label.

Mot. 13-14. Plaintiffs' expert Dr. Wilcox explains what consumers will take from this: there must be something dangerous about PFAS, which is why it, alone among all chemicals, is being called out for attention with the flask. Mot. 14-15 (citing Wilcox Decl. ¶¶ 28-29). At *best* for Defendants, the label is "literally true but nonetheless misleading," *Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263, 1276 (9th Cir. 2023), which is not good enough under *Zauderer*.[2]

Tellingly, Defendants cannot even keep their story straight. As shown above, *NMED's own website* twice calls the label a "warning." *Supra*, p. 2. The expert Dr. DeWitt likewise gives the game away too when she opines "[o]ne way to reduce exposure to PFAS is to provide people with information on what products contain PFAS. *Applying a single, uniform warning*, as done with the PFAS Act, will ensure that people can make informed decisions about products to purchase or avoid to modify their own PFAS exposures, regardless of the known or unknown toxicological hazards associated with any PFAS." DeWitt Decl. ¶ 15 (emphasis added). That is Plaintiffs' case in a nutshell: The label is a "warning" that one should "avoid" the product, "regardless of the known or unknown toxicological hazards associated with any PFAS." The label is not delivering a "purely factual and uncontroversial" message about PFAS as *Zauderer* allows—it is a scare tactic.

Defendants argue (at 11) the label is not a warning since it "does not state that PFAS will pose a specific risk to consumers." According to Defendants (at 12), the "lack of characterization in New Mexico's PFAS label is a feature, not a bug." But "Danger: PFAS" obviously would be a warning, even though it provides no "specific" information. Indeed, Defendants' own declarations

[2] Defendants ask the Court to consider, *e.g.*, the use of a flask with a cross to indicate medicine, that a software company uses a flask to indicate test versions of software, and that Dupont used a flask in an advertisement in the 1960s. Opp. 14-15; Dickerson Decl. ¶¶ 18-20. None of those strained examples reveal anything about modern consumers' reactions to the PFAS label.

contradict their argument on this point: after all, the Globally Harmonized System of warnings for chemicals includes pictographs that comprise only "!" as a warning. Dickerson Decl. ¶ 16.

The many successful challenges to warning labels under California's Prop 65 illustrate the absurdity of Defendants' "lack of characterization" argument. For example, *Wheat Growers* struck down the label "WARNING: This product can expose you to glyphosate, a chemical listed as causing cancer pursuant to the requirements of California law." 85 F.4th at 1272, 1278, 1283. On Defendants' view, California could have entirely avoided the challenge by instead requiring unspecific labels such as "DANGER: glyphosate" or "Glyphosate!" But that would not deliver "purely factual" information and would still implicate a "controversy" over safety. *See id.* at 1280-81 (warning "convey[ed] the overall message that glyphosate is unsafe which is, at best, disputed"). If anything, avoiding "specific" risk language only heightens the problem under *Zauderer*, because vague language is not "purely factual." For example, Defendants (at 3) assert "all PFAS are persistent in the environment," but implicitly concede not all pose a human health risk. There is a vast gulf between a product that does not degrade and one that may cause cancer. The PFAS label does not say which risk is present and so consumers will likely fear the worst.

Defendants emphasize that consumers are accustomed to seeing other pictographs, such as recycling labels, that are not warnings. Opp. 14, 21. That is a *non sequitur*. Consumers' views of the well-known recycling symbol say nothing about how consumers will interpret a brand-new pictographic symbol intended to highlight the presence of particular chemicals in a product.

This case is nothing like the country-of-origin and caloric-content labeling cases on which Defendants rely (at 10-11, 12-13). There, the strictly-textual labeling requirements were neutral: they generally required the country of origin to be identified and the caloric-content of menu items to be disclosed. *See Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18, 20 (D.C. Cir. 2014)

("*AMI*"); *N.Y. State Rest. Ass'n v. N.Y.C. Bd. of Health*, 556 F.3d 114, 121 (2d Cir. 2009) ("*NYSRA*"). They did not single out only certain countries or certain foods for special attention and did not require a pictograph that could be construed as a warning. Here, the challenged regulation requires that only PFAS, alone among all chemicals, be marked with the flask symbol, because NMED disapproves of PFAS and wants to "turn off the spigot" of that material into New Mexico. A better comparison would be a hypothetical country-of-origin label that applied *only* to China, requiring the PRC flag be displayed on products from *just* that country, paired with government messaging that products bearing that label pose risks to consumers. Moreover, those other cases each had factors that distinguished them from this case. In *AMI*, the court emphasized that "[h]istory can be telling," recounted that "[c]ountry-of-origin information has an historical pedigree that lifts it well above 'idle curiosity,'" and noted that "AMI does not suggest anything controversial about the message that its members are required to express." 760 F.3d at 23, 27. Labeling for PFAS, on the other hand, is new and no other state requires the pictograph or a label on so many categories of products. And in *NYSRA*, there was no dispute that the purely textual disclosures were "factual." 556 F.3d at 134. Again, that is not the case here, where the label is not "purely factual and uncontroversial" as explained in Plaintiffs' opening brief.

Finally, even if Defendants are right that the label is not a warning, that only makes the situation *worse*, not better. As the Supreme Court has explained, "[e]ven under *Zauderer,* a disclosure requirement cannot be unjustified or unduly burdensome," must "remedy a harm that is potentially real, not purely hypothetical," and must extend "no broader than reasonably necessary." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 776 (2018) (quotations and citations omitted) ("*NIFLA*"). And "[i]mportantly, [the state] has the burden to prove that the [compelled disclosure] is neither unjustified nor unduly burdensome." *Id.* Under Defendants' position that

the label does not say anything about PFAS other than that it is a chemical, *the same as water*, it is hard to see how the label can "remedy a harm," or how it is justified and not unduly burdensome.

## III. There Is No "Consensus" All PFAS Should Be Regulated And Labeled As A Class.

NMED wants consumers to see the PFAS flask symbol and equate it to health risks. Its own website says so: "New Mexicans can limit their exposure to forever chemicals and *reduce health risks by looking for the PFAS symbol* and selecting products made without forever chemicals." Suppl. Snyder Decl., Ex. 16 (emphasis added). Plaintiffs' expert Dr. Wilcox agrees this is how consumers will interpret the label. Wilcox Decl. ¶¶ 29-48.

But a health warning about *all* PFAS is not supported by settled science and so is not "purely factual and uncontroversial" under *Zauderer*. NMED's expert Dr. DeWitt acknowledges Defendants' case is based, at best, on "emerging" evidence, a phrase she uses repeatedly in her declaration. *See* DeWitt Decl. ¶ 13 ("emerging data"), ¶ 14 ("[e]merging evidence"), ¶ 18 (twice "emerging research"), ¶ 77 ("emerging evidence"). She concedes that "describing the pathological and physiological effects of PFAS on humans and other living organisms is still an area of active research," and the most she will say is that "less well studied PFAS *may* cause the same type of adverse health effects as have been described for PFOA and PFOS[.]" *Id.* ¶ 18 (emphasis added). NMED's Dr. Chapman likewise notes that "[m]uch of the scientific and regulatory attention has focused on the non-polymer subclass" of PFAS, Chapman Decl. ¶ 77, so *not* fluoropolymers. For fluoropolymers, he says that "*various publications* in the scientific literature *support* that the fluoropolymer subclass of PFAS *may not* be as inert as originally understood[.]" *Id.* ¶ 84 (emphases added). "May not be as inert as originally understood" is scarcely settled science.

The PFAS warning label thus communicates a message to consumers—a health warning about *all* PFAS—that is not "purely factual and uncontroversial." Defendants' brief is misleading in the same way. For example, Defendants claim (at 3, emphasis added) that "*PFAS* can be cancer-

causing." But even assuming that disputed conclusion for *any* PFAS, Dr. DeWitt's discussion of the available scientific evidence is limited to only a small subset of PFAS—she nowhere opines that *all* PFAS can be cancer-causing. DeWitt Decl. ¶¶ 41-46. Nor could she. *See* Rackl Decl. ¶¶ 39, 51-52. This Court has the ability to parse the evidence to realize Defendants are claiming only *some* PFAS can cause cancer, but consumers do not. Consumers can only assume all products bearing the PFAS label present similar health risks, an implication that fails the *Zauderer* test.

Defendants invoke (at 13) a "consensus" that PFAS should be addressed "as a class," even positing (at 6) "a scientific and political consensus that consumers want to know, and should know, about PFAS in their products." That is pure fiction. Plaintiffs' opening brief noted that international bodies and federal agencies have *not* regulated all PFAS as a class and have even warned against doing so. Mot. 6-7. Defendants never address that evidence. Dr. Chapman says he is "not aware of any jurisdictions or regulations across U.S. States and in Europe that do not regulate PFAS as a class in consumer products." Chapman Decl. ¶ 162; *see also id.* ¶ 161 ("States are not selectively prohibiting certain types of PFAS in consumer products …; states are prohibiting whole classes of products across PFAS classes"). That is not true: *New Mexico itself* rejected prohibiting PFAS "as a class" when it exempted fluoropolymers from the PFAS Protection Act's ban. NMSA 1978, § 74-15-3(A)(16). Dr. DeWitt, for her part, quotes the "Zürich Statement" as calling for "actions … to address *groups* of PFAS rather than individual chemicals[.]" DeWitt Decl. ¶ 70 (emphasis added). "Groups of PFAS" does not equal all PFAS as a single group. For that proposition she cites "[t]wo recent publications," *id.*, which is hardly settled science.

With respect to labeling specifically, there is no "consensus" that all products containing any kind of PFAS should be labeled. Only a handful of states require *any* kind of labeling about PFAS on *any* products, and none have the extensive sweep of the challenged regulation. Mot. 25

(discussing state laws). Not even the New Mexico legislature *mandated* labeling, much less for *all* PFAS. It merely said the EIB "may" require labeling. NMSA 1978, § 74-15-4(B). Notably, two of the five EIB members voted in favor of an amendment to the regulation that would have carved products exempt from the PFAS ban, such as fluoropolymers, out of the labeling mandate. Smithkier Decl., Ex. F, at 23-24 ¶¶ 114, 115. The EIB's labeling mandate is, at bottom, the outlier view of a bare majority of a single state board, not a consensus position.

## IV. Defendants Underplay The Burdens The Regulation Imposes On Regulated Entities.

Defendants argue (at 20) the label does not burden speech rights because the symbol is small, but their cherrypicked photos of large bottles (at 7) are misleading. On other products the labels will loom far larger in context—as shown by an example in NMED's own guidance document that Defendants omitted from their brief. *See, e.g.*, Smithkier Decl., Ex. B, at 5. In addition, and contrary to Defendants' contention (at 20), courts commonly consider economic burdens in applying *Zauderer*. *E.g.*, *Cal. Chamber of Com.*, 29 F.4th at 479-80. Defendants suggest (at 24) companies may not suffer "but for" economic harm because they might update their labels anyway. That is sheer speculation, and ignores that *entire products* may need to be redesigned to accommodate labeling. Mot. 20.

Defendants' suggestion (at 15-16) they might grant waivers or allow the use of other states' labels does not move the needle. A state cannot defeat a First Amendment challenge by arguing officials *might* apply the law narrowly. *See United States v. Stevens*, 559 U.S. 460, 477-78, 480 (2010). Here, both the waiver and the other-state labeling provisions leave it up to NMED whether to grant an exception, with no express guardrails on NMED's exercise of discretion. The other-state labeling provision allows NMED to reject any label that "violates New Mexico law." NMAC § 20.13.2.13(E). If that does not mean the label must still include an Erlenmeyer flask, as required by New Mexico law, then it is difficult to know what the standard is. And the waiver provision

tells applicants to provide "[a]n explanation of why the product should not require a label," *id.*, § 20.13.2.13(F)(3), but does not explain what standard NMED will apply in its decisionmaking.

Moreover, the waiver provision only applies to some products: those whose PFAS "will [n]ever come into direct contact with a consumer while the product is being used as intended during the useful life of the product." *Id.* § 20.13.2.13(F). Products with consumer-facing PFAS, even just the fluoropolymer PTFE, are categorically ineligible. Likewise, the provision concerning other states' labels only helps if another state has a relevant label. *Id.* § 20.13.2.13(E). In that regard, New Mexico's approach gets things backwards—it requires its onerous label for precisely those products that every other state has concluded need not be labeled *at all*.

**V. At A Minimum, The Court Should Enjoin The Regulation As Applied To Fluoropolymers Like PTFE And No-Consumer-Contact PFAS.**

If the Court does not enjoin the labeling mandate altogether, it should at least enjoin it with respect to fluoropolymers and products containing PFAS to which consumers are not exposed.

Defendants largely rely (at 2-3, 13, 18) on alleged production and disposal effects relating to fluoropolymers. But Dr. Chapman just says that "[r]egulatory bodies are beginning to acknowledge the body of science" about such alleged impacts. Chapman Decl. ¶ 93. He does not claim the science is settled, but quotes an OECD report calling for a "deeper investigation" into "life cycle" issues. *Id.* ¶ 98. Even if the science were settled, *Zauderer* only ensures that consumers can obtain accurate information "relat[ing] to" their transactions; it does not allow states to use companies as mouthpieces for any message related to a product or service. *See NIFLA*, 585 U.S. at 768-69; *Zauderer v. Off. of Disciplinary Couns.*, 471 U.S. 626, 651 (1985). In the sole post-*NIFLA* case Defendants proffer, the risk at issue was to the consumer herself. *See CTIA v. City of Berkeley, Cal.*, 928 F.3d 832, 836-37 (9th Cir. 2019). That case says nothing about mandated labels based on upstream and downstream issues not directly affecting consumers.

As for Defendants' description (at 2-3) of the alleged risks of PTFE in non-stick pans, that is at war with admissions NMED made in the regulatory proceeding, where their own expert agreed the "risk from exposure in [one's] own home to [fluoropolymers] in consumer products is likely low." Snyder Decl., Ex. 7 at 416-17; *see also* Mot. 15; Rackl Decl. ¶¶ 43-44. Even Dr. Chapman does not claim the science with respect to fluoropolymers like PTFE is settled. *See supra*, p. 8.

## VI. Defendants Present No Real Argument Against Maintaining The Status Quo.

Plaintiffs' member companies confront a January 1, 2027 deadline for compliance with the labeling mandate, which will cost them hundreds of millions of dollars to address.[3] Defendants argue (at 23-24) that compliance with an unconstitutional labeling mandate is not irreparable harm, but no case they cite says that, and their argument flies in the face of precedent consistently holding that the loss of First Amendment rights for any period of time is irreparable harm. *See* Mot. 26.

Defendants do not really dispute the cost of compliance; their sheer speculation (at 24) that some regulated companies might redesign their labels anyway is pure handwaving bereft of evidentiary support. Defendants also do not address the evidence that smaller products may need to be entirely redesigned to accommodate the label. On the flipside, Defendants make no argument why the labeling requirement cannot wait. Again, no other state imposes such an extensive, onerous labeling mandate, and the legislature did not *require* labeling in the PFAS Protection Act, leaving it entirely up to the EIB's discretion. There is simply no evidence that maintaining the status quo for a short period while this litigation proceeds will harm the public interest at all.

## CONCLUSION

Plaintiffs respectfully request that the Court grant their motion.

[3] In a footnote (at 7-8, n. 3), Defendants "preserve[]" an argument that because *one company* challenged the labeling mandate in state court, this Court should be wary of considering this lawsuit. That argument is meritless, as Plaintiffs will show if Defendants ever actually make it.

Dated: August 17, 2026

Respectfully submitted,

/s/ *John C. Anderson*
JOHN C. ANDERSON
**HOLLAND & HART LLP**
215 Lincoln Ave., Suite 100
Santa Fe, NM 87501
Phone: +1 505 988 4421
jcanderson@hollandhart.com

KEVIN P. MARTIN (*pro hac vice*)
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Phone: +1 617 570 1000
KMartin@goodwinlaw.com

BRIAN T. BURGESS (*pro hac vice*)
ANDREW KIM (*pro hac vice*)
CASSANDRA SNYDER (*pro hac vice*)
NOELLE WILSON (*pro hac vice*)
**GOODWIN PROCTER LLP**
1900 N Street NW
Washington, DC 20036
Phone: +1 202 346 4000
BBurgess@goodwinlaw.com
AndrewKim@goodwinlaw.com
CassandraSnyder@goodwinlaw.com
NWilson@goodwinlaw.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2026, a true and correct copy of the foregoing was electronically filed and served on all parties of record via the Court's CM/ECF system.

*/s/ John C. Anderson*
JOHN C. ANDERSON